COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                               NOS.
 2-08-458-CR

                                                       2-08-459-CR

                                                       2-08-460-CR

                                                       2-08-461-CR

 

 

JERRY EUGENE MILLER,
II                                                               APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

                FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

                                                  I.  Introduction

Appellant
Jerry Eugene Miller, II argues the trial court should have granted his motions
to suppress evidence.  In two points,
Appellant argues that the arrest and search warrants were not supported by
probable cause and that his videotaped statement was taken after his illegal
arrest and was not voluntarily given.  We
will affirm.








                                         II.  Procedural Background

Appellant
was charged in four separate indictments with felony theft offenses: two
indictments alleged theft over $20,000 but less than $100,000,  and two indictments alleged theft over $1,500
but less than $20,000.  See Tex.
Penal Code Ann. ' 31.03(e)(4)B(5)
(Vernon Supp. 2009).  By filing motions
to suppress in each of the four cases, Appellant sought to suppress Aall
evidence seized@ by challenging the probable
cause supporting his arrest and search warrants and the voluntariness of his
videotaped statement.  The trial court
denied each of Appellant=s motions to suppress after
conducting two evidentiary hearings. 
Appellant thereafter entered a plea of nolo contendere to each of the
charged offenses.  Pursuant to the plea
agreement, the trial court deferred an adjudication of Appellant=s
guilt and placed him on ten years=
community supervision in two cases and five years=
community supervision in the other two cases. 
These appeals followed.

                                           III.  Standard of Review








We
review a trial court=s ruling on a motion to
suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total
deference to a trial court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on credibility
and demeanor.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002).  We must uphold
the trial court=s ruling if it is supported
by the record and correct under any theory of law applicable to the case even
if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).

                                            IV.  Appellant=s
Arrest

Appellant
contends in part of his first point that the trial court should have granted
his motion to suppress because the arrest warrant affidavit did not establish
probable cause.  The State counters that,
even if the arrest warrant is invalid, the arresting officers witnessed
Appellant commit an offense in their presence and could have validly arrested
Appellant without a warrant.

AA
peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view.@  Tex. Code Crim. Proc. Ann. art. 14.01(b)
(Vernon 2005); State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App.
2002).  The test for probable cause for a
warrantless arrest under article 14.01(b) is Awhether
at that moment the facts and circumstances within the officer=s
knowledge and of which he had reasonably trustworthy information were
sufficient to warrant a prudent man in believing that the arrested person had
committed or was committing an offense.@  Steelman, 93 S.W.3d at 107 (quoting Beverly
v. State, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)).








Here,
the officers could have validly arrested Appellant because the truck he was
driving at the time of his arrest was stolen. 
Investigator James Peel testified at the suppression hearing that he
knew the truck Appellant was driving at the time of his arrest was stolen
because Investigator Kevin Hilliard had described the truck as stolen and two
or three named informants in custody had described the stolen truck to
investigators.  Investigator Hilliard
similarly testified that the officers on the scene knew the vehicle Appellant
was driving had been stolen; Michael Brooks had previously informed
Investigator Hilliard that Appellant was currently driving a stolen Dodge truck
and that Appellant had taken the VIN plate from a Dodge truck he owned and
placed it onto the stolen Dodge truck he was driving.  And Investigator Hilliard had previously seen
a Dodge truck on Appellant=s
property with a missing VIN plate.  This
reasonably trustworthy information gave the officers probable cause to arrest
Appellant without a warrant for committing the offenses of theft, unauthorized
use of a motor vehicle, or tampering with vehicle identification numbers.  See Tex. Penal Code ''
31.03, .07(a) (Vernon 2003), .11(a) (Vernon Supp. 2009); Brown v. State,
986 S.W.2d 50, 52 (Tex. App.CDallas
1999, no pet.) (holding computer database report indicating vehicle was stolen
provided officers with probable cause to make warrantless arrest of driver).








Because
the arresting officers witnessed Appellant commit at least one offense in their
presence, the officers could have validly arrested Appellant without a
warrant.  See Tex. Code Crim.
Proc. Ann. art. 14.01(b); Tex. Penal Code ''
31.03, .07(a), .11(a).  Therefore, we
need not decide whether Appellant=s
arrest warrant provided the magistrate with sufficient information to support
an independent judgment that probable cause existed for the warrant.  See Tex. R. App. P. 47.1.  We overrule this portion of Appellant=s
first point.

                                     V.  The Three Search Warrants

Appellant
argues in the remainder of his first point that the three search warrants were
not based on probable cause.  In deciding
whether to address the merits of an appeal from the denial of a motion to
suppress, we must first identify the fruits that the trial court declined to
suppress.  Gonzales v. State, 966
S.W.2d 521, 524 (Tex. Crim. App. 1998). 
If it is not clear from the testimony and exhibits what the Afruits@
are, then we need not address the merits of the claim.  Id.








In
this case, Appellant=s motions sought to suppress
Acertain
items [that] were allegedly seized@ and
Aany
evidence obtained pursuant to the warrants.@
Appellant=s
brief in this court similarly states that he sought to suppress Aall
evidence seized@ in his four cases.  Nowhere, though, has Appellant identified the
specific items of evidence or categories of evidence he sought to exclude by
challenging the three search warrants. 
Appellant has therefore presented nothing for our review.  See Brennan v. State, 140 S.W.3d 779,
781 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d)
(holding global request to suppress Aall
evidence seized or obtained@
from alleged illegal searches and failure Ato
identify what, if any, evidence was ruled upon by the denial@
presented nothing for appellate review). 
We overrule the remainder of Appellant=s
first point.

                                VI.  Appellant=s
Videotaped Statement

Appellant
argues in his second point that the trial court erred by denying his motion to
suppress his oral and written statements. 
Specifically, Appellant contends that his videotaped statement should
have been suppressed because it was taken after his illegal arrest and was not
freely and voluntarily given.

A.  Legality of Appellant=s
Arrest

Appellant
first contends his videotaped statement should be suppressed because it was
taken after his illegal arrest.  We held
above, however, that Appellant=s
arrest was not illegal because Appellant committed an offense in the officers=
presence.  We therefore overrule this
portion of Appellant=s second point.

B.  Voluntariness of Appellant=s
Statement

Appellant
also argues that his videotaped statement should have been suppressed because
it was not voluntarily given. 
Specifically, Appellant contends his statement was involuntary because
he was held in Aa solitary, brutally cold
cell for several hours@ without food and water and
because investigators allegedly made promises to him during the
interrogation.  The trial court found
that the A[s]tatements
made by [Appellant] were voluntary and not the result of coercive police
activity nor were they given as a result of improper promises made by police
officers.@

1.       Applicable Law








An
accused=s
statement is admissible evidence if the accused made it freely and voluntarily
and without compulsion or persuasion. 
Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005).  When deciding whether a statement was
voluntary, we consider the totality of the circumstances in which the statement
was obtained.  Creager v. State, 952
S.W.2d 852, 855 (Tex. Crim. App. 1997); Reed v. State, 59 S.W.3d 278,
281 (Tex. App.CFort
Worth 2001, pet. ref=d).  A confession is involuntary if circumstances
show that the defendant=s will was Aoverborne@ by
police coercion.  Creager, 952
S.W.2d at 856.  The defendant=s
will may be Aoverborne@ if
the record shows that there was Aofficial,
coercive conduct of such a nature@
that a statement from the defendant was Aunlikely
to have been the product of an essentially free and unconstrained choice by its
maker.@  Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995); Frank v. State, 183 S.W.3d 63, 75 (Tex. App.CFort
Worth 2005, pet. ref=d).








If a
promise made by a person in authority induced a confession, then that
confession is inadmissible.  Penry v.
State, 903 S.W.2d 715, 748 (Tex. Crim. App.), cert. denied, 516 U.S.
977 (1995); Alvarez v. State, 649 S.W.2d 613, 620 (Tex. Crim.
App. 1982), cert. denied, 464 U.S. 849 (1983).  But before a promise will render a confession
inadmissible, the promise must be shown to have induced the confession because
it was positive for the defendant, made or sanctioned by someone in authority,
and of such an influential nature that the appellant might speak untruthfully
in response.  Muniz v. State, 851
S.W.2d 238, 254 (Tex. Crim. App.), cert. denied, 510 U.S. 837
(1993).  In our review, we look to
whether the circumstances of the promise would reasonably induce a defendant to
admit to a crime he did not commit.  Sossamon
v. State, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991), abrogated on other
grounds by Graham v. State, 994 S.W.2d 651 (Tex. Crim. App. 1999).

2.       Analysis








Appellant
argues that the condition of his detention rendered his videotaped statement
involuntary.  Appellant testified at the
suppression hearing that he was kept in a cold cell for ten hours without a
blanket, food, or water.  However,
Investigator Jody Johnson testified that he did not recall Appellant
complaining on the day of the interview about the conditions of the jail or
saying that he was cold or hungry.  And
Investigator Hilliard testified that he interviewed Appellant approximately
four hours after he was arrested.  Given
this conflicting testimony, the voluntariness of Appellant=s
videotaped statement involved the trial court=s
evaluation of credibility and demeanor.  See
Stewart v. State, No. 04-08-00274-CR, 2009 WL 2183397, at *6 (Tex. App.CSan
Antonio July 21, 2009, pet. ref=d)
(mem. op., not designated for publication) (holding trial court did not err by
finding oral statements voluntarily given when trial court heard conflicting
evidence concerning the appellant=s
alleged deprivation of food, water, medication, or bathroom access over the
course of twelve hours).  Deferring as we
must to the trial court=s determination of
credibility and demeanor, we hold the trial court did not abuse its discretion
by finding the conditions of Appellant=s
detention did not render his videotaped statement involuntary.  See Bell v. State, 169 S.W.3d 384, 391B92
(Tex. App.CFort
Worth 2005, pet. ref=d) (holding eight hours of
questioning while in handcuffs and leg shackles did not render confession
involuntary where appellant never indicated he did not want to answer any more
questions or wanted to speak to attorney and never requested food, water, or
bathroom breaks).

Appellant
also argues that his oral statements were involuntary because investigators
made the following Apromises@ to
him during the interview: (1) telling Appellant he was arrested because he Ablew
off@
investigators after they asked him to help recover the stolen property; (2)
offering to make Appellant=s
arrests on other charges more convenient by allowing him to turn himself in or
be arrested for several charges at one time; (3) offering to not mention
Appellant=s
girlfriend (his alibi witness) to his wife when they questioned her about
Appellant=s
crimes; (4) telling Appellant that telling the truth is Aa
start@ for
how to get out of trouble but simultaneously saying they were not making any
promises to Appellant; (5) offering to ask the district attorney to drop the
charges for a motorcycle theft but also stating the investigator could not
promise the district attorney would agree to drop the charges; and (6) telling
Appellant they would not arrest him on other charges immediately but instead
would give him time to gather other stolen property before they arrested him
again.  We do not believe any of these
alleged promises rendered Appellant=s
videotaped statement involuntary.








Appellant
testified at the suppression hearing that he did not initiate the interview
with the investigators and that he understood the investigators told him during
the interview that the other cases they might file against him would Ago
away@ if
he Aworked
with@ the
investigators.  On the other hand, Investigator
Johnson testified that Appellant initiated the interview by asking to speak
with him.  Consistent with Investigator
Johnson=s
testimony, the videotape shows that Investigator Johnson stepped into the room
at the beginning of the interview and stated, AThey
said you wanted to talk to me.@  The videotape also shows that investigators
read Appellant his Miranda rights and that Appellant acknowledged he
understood his rights.  See Miranda v.
Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).








Appellant
also testified that officers promised to dismiss charges against him if he
cooperated with them, but the videotaped interview does not corroborate
Appellant=s
testimony.  Investigator Ricky Montgomery
did tell Appellant during the interview that he would ask the district attorney
to dismiss the charges against Appellant on the stolen motorcycle case if he
helped them recover the stolen generator and other stolen property, but
Investigator Montgomery simultaneously told Appellant that he could not promise
Appellant anything, that the district attorney would decide whether to dismiss
any charges, and that it was not Investigator Montgomery=s
decision to make. Moreover, the videotaped interview shows that the
investigators repeatedly told Appellant he would in fact be charged in several
cases but that they would make the process as convenient for him as they could
if he would help them recover the stolen property.  For example, Investigator Hilliard offered to
call Appellant once the cases were filed so Appellant could arrange for bond
before he was arrested and possibly spend little to no time in jail before
bonding out. But Investigator Hilliard also told Appellant that he did not have
the authority to dismiss cases.

Given
the explicit representations of lack of authority to dismiss charges, we do not
believe the investigators= statements or offers were
of such a nature that Appellant might speak untruthfully in response.  See Johnson, 68 S.W.3d at 654B55
(holding defendant=s confession voluntary where
defendant initiated discussion of a deal to avoid death penalty, detective told
defendant the police could make no guarantees, and detective indicated Apolice
were without authority to make deals but instead could only relay information
to the court and prosecutor@).  After viewing the record in the light most
favorable to the trial court=s
ruling and deferring as we must to the trial court=s
credibility determinations, we cannot say the trial court erred by finding that
Appellant=s
oral statements were voluntarily given.  See
Sossamon, 816 S.W.2d at 345 (stating a promise must, among other things, be
Aof
such character as would be likely to influence the defendant to speak
untruthfully@ before
it will render a confession involuntary). 
We overrule the remainder of Appellant=s
second point.

VII. 
Conclusion








Having
overruled each of Appellant=s
two points, we affirm the trial court=s
judgments.

 

 

 

BILL MEIER

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  April 15, 2010