Jimmie Dewayne **HUDSON**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 10–05–00172–CR.

Court of Appeals of Texas, Waco.

Aug. 30, 2006.

Samuel Clifford Bishop, Bishop & Bishop, Decatur, for Appellant/Relator.

Greg Lowery, County Atty. for Wise County, Decatur, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

After the trial court denied Jimmie Dewayne Hudson's suppression motion, Hudson pleaded *nolo contendere* to burglary of a vehicle. Pursuant to a plea bargain, the court sentenced Hudson to ten months' confinement. Hudson contends in three points that the court abused its discretion by: (1) denying his suppression motion because his interrogation without a warrant, probable cause, or reasonable suspicion constitutes an unlawful seizure; (2) denying his suppression motion because his DNA was obtained from a Dr. Pepper can which had been unlawfully seized; and (3) denying his motion for new trial premised on the same issues presented in his first two points. We will affirm.

### Background

This case involves the burglary of three semis and an equipment trailer. The deputy who responded to the initial report found a piece of a tooth in the driver's seat of one of the semis. About three weeks after the burglary, an investigator identified Hudson as a potential suspect because of his prior involvement in similar cases. Hudson was in jail on other charges when he was identified as a suspect.

The investigator asked jailers to bring Hudson to his office to discuss the burglary. Hudson asked for a Dr. Pepper, which was given him. Before asking questions, the investigator read Hudson his statutory warnings. Hudson denied knowing anything about the burglary. He refused to allow the investigator to look at his teeth to see if one was chipped or broken. He refused the investigator's request to use a swab and obtain a DNA specimen.

When the jailers came to return Hudson to his cell, Hudson smashed the Dr. Pepper can and threw it in a trash can in the investigator's office. After Hudson left, the investigator retrieved the can and submitted it for DNA analysis. A DNA specimen obtained from Hudson's Dr. Pepper can matched the DNA of the tooth. Based on this information, an arrest warrant was

obtained, and Hudson was arrested for the offense.

## Interrogation

 Hudson contends in his first point that his interrogation without a warrant, probable cause, or reasonable suspicion constitutes an unlawful seizure.

[A] defendant is not required to have the evidence which he sought to suppress admitted in order for the court of appeals to address the merits of an appeal challenging denial of a pretrial motion to suppress.... [A]ppellate courts must use a two step inquiry when deciding whether to address the merits of a claim regarding the trial court's denial of a pretrial motion to suppress evidence prior to a guilty plea. First, the appellate court must identify "the fruits" that the trial court held would not be suppressed. Second, the appellate court must determine that these fruits have "somehow been used" by the State. If it is not clear from the testimony and exhibits what "the fruits" are, then the appellate court need not address the merits of the claim. Likewise, if the fruits have not "somehow been used" by the State, then the appellate court need not address the merits of the claim.

*Gonzales v. State*, 966 S.W.2d 521, 524 (Tex.Crim.App.1998) (citations omitted); *accord Badgett v. State*, 79 S.W.3d 581, 584 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

 Here, it is clear that the "fruit" Hudson wanted suppressed is the result of the DNA testing made possible by the seizure of the Dr. Pepper can following his interrogation. *See Badgett*, 79 S.W.3d at 584.

In *Kraft v. State*, the Court of Criminal Appeals explained what it means for evidence to have been "used" against a defendant in this context.

[S]o long as it may be concluded that particular evidence the accused maintains should have been suppressed pursuant to a motion raising Fourth or Fifth Amendment violations would in any measure inculpate the accused, that evidence has been "used" against him in securing his misdemeanor conviction, and hence, the appellate court should entertain the merits of his appeal.

762 S.W.2d 612, 615 (Tex.Crim.App.1988) (quoted by *Gonzales*, 966 S.W.2d at 523–24); *accord Badgett*, 79 S.W.3d at 584.

Here, the result of the DNA testing inculpated Hudson and was relied on as the basis for his arrest warrant. Thus, this evidence was used against him. *See Gonzales*, 966 S.W.2d at 523–24; *Kraft*, 762 S.W.2d at 615; *Badgett*, 79 S.W.3d at 585.

 Hudson was in custody at the time of his interrogation. *See Jones v. State*, 119 S.W.3d 766, 776 (Tex.Crim.App.2003); *Cooks v. State*, 844 S.W.2d 697, 734 (Tex. Crim.App.1992). Nevertheless, the investigator properly read Hudson the required constitutional and statutory warnings before questioning him.

 The Fifth Amendment does not prohibit custodial interrogation.[1] Rather, as interpreted by *Miranda v. Arizona*, the Fifth Amendment prohibits the State from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the [Fifth Amendment] privilege against self-incrimination." 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16

---

**1.** The Fifth Amendment provides in pertinent part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

L.Ed.2d 694 (1966); *accord Wilkerson v. State,* 173 S.W.3d 521, 526 (Tex.Crim.App. 2005). The preferred "procedural safeguards" are the well-known *Miranda* warnings, which the investigator properly read to Hudson before questioning him. *See Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612.

■ Article 38.22 of the Code of Criminal Procedure likewise does not prohibit custodial interrogation. Rather, it provides that no written or oral statement of an accused resulting from custodial interrogation is admissible unless the requisite statutory warnings are provided. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3 (Vernon 2005). Again, the investigator read Hudson the required warnings before questioning him.

> [E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage—as long as the police do not convey a message that compliance with their requests is required.

*Florida v. Bostick,* 501 U.S. 429, 434–35, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). "In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 436, 111 S.Ct. at 2387.

The investigator properly warned Hudson of his right to remain silent. Hudson promptly refused to answer any questions or cooperate in the investigation. Thus, he apparently felt free to decline to answer the investigator's questions and terminate the interview. Accordingly, we hold that his questioning while already in custody on other charges was not an unlawful seizure. Thus, we overrule Hudson's first point.

## Seizure of Can

■ Hudson contends in his second point that the seizure of his DNA specimen from the Dr. Pepper can was unlawful because it was done without a warrant, probable cause, or reasonable suspicion. The State responds that the seizure was not unlawful because Hudson voluntarily abandoned the can.

■ The Fourth Amendment does not prohibit the seizure of property which has been voluntarily abandoned. *See Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); *Hawkins v. State,* 758 S.W.2d 255, 257 (Tex. Crim.App.1988); *Mouton v. State,* 101 S.W.3d 686, 690 (Tex.App.-Texarkana 2003, no pet.). Property is considered to have been voluntarily abandoned "if (1) the defendant intended to abandon the property and (2) his decision to abandon the property was not due to police misconduct." *Brimage v. State,* 918 S.W.2d 466, 507 (Tex.Crim.App.1994); *accord Mouton,* 101 S.W.3d at 690; *Shelley v. State,* 101 S.W.3d 606, 611 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).

Here, when Hudson was about to be taken from the investigator's office, he threw his Dr. Pepper can in the trash of his own volition.[2] This indicated an intent on his part to abandon the can. *Cf. California v. Greenwood,* 486 U.S. 35, 39–41, 108 S.Ct. 1625, 1628–29, 100 L.Ed.2d 30 (1988) (person has no reasonable expectation of privacy in items deposited in trash).

---

**2.** Hudson suggests that he would not have been allowed to take the can back to his cell. Nevertheless, there is nothing in the record to support this assertion or contradict it. In any event, it was within the court's discretion to find that Hudson threw the can in the trash of his own accord and not because the jailers required him to. *See Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000) (appellate court should "assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion").

There is nothing in the record to indicate that Hudson's decision to throw the can away was induced by police misconduct. *See Hollingsworth v. State,* 15 S.W.3d 586, 593 (Tex.App.-Austin 2000, no pet.). Moreover, we essentially determined in connection with Hudson's first point that there was no police misconduct. Accordingly, we overrule Hudson's second point.

## Motion for New Trial

Hudson contends in his third point that the court abused its discretion by denying his motion for new trial, which raised the same issues presented in his first two points. Because we have overruled Hudson's first two points, we cannot say that the court abused its discretion by denying a motion for new trial premised on the same issues raised in those points. Accordingly, we overrule Hudson's third point.

We affirm the judgment.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

Hudson appeals his conviction for burglary of a vehicle. *See* TEX. PENAL CODE ANN. § 30.04(a) (Vernon 2003). Our first duty as an appellate court, beyond determining our jurisdiction, is to determine, if the complaint is of the type that must be preserved for review, whether it has been properly preserved. *See Haley v. State,* 173 S.W.3d 510, 515 (Tex.Crim.App.2005); *Martinez v. State,* 22 S.W.3d 504, 507 (Tex. Crim.App.2000); *see also Alonzo v. State,* 158 S.W.3d 515, 515–17 (Tex.Crim.App. 2005) (Keller, P.J., dissenting). Accordingly, we should affirm on the following grounds. Because the majority does not do so, I concur in the judgment.

***Motion to Suppress Evidence.*** In Hudson's first two issues, he contends that the trial court erred in overruling Hudson's motion to suppress evidence. In his first issue, he complains of his oral statements.[1] In his second issue, he complains of a specimen of his saliva.

A defendant is not required to have the evidence which he sought to suppress admitted in order for the court of appeals to address the merits of an appeal challenging denial of a pretrial motion to suppress. [A]ppellate courts must use a two step inquiry when deciding whether to address the merits of a claim regarding the trial court's denial of a pretrial motion to suppress evidence prior to a guilty plea. First, the appellate court must identify "the fruits" that the trial court held would not be suppressed. *McGlynn* [*v. State*], 704 S.W.2d [18,] 21 [ (Tex.Crim.App.1982) ]. Second, the appellate court must determine that these fruits have "somehow been used" by the State. *Kraft* [*v. State* ], 762 S.W.2d [612,] 613–14 [ (Tex.Crim.App.1988) ]. If it is not clear from the testimony and exhibits what "the fruits" are, then the appellate court need not address the merits of the claim. Likewise, if the fruits have not "somehow been used" by the State, then the appellate court need not address the merits of the claim.

*Gonzales v. State,* 966 S.W.2d 521, 524 (Tex.Crim.App.1998) (some internal citations omitted).

The record does not contain the proceedings at Hudson's guilty plea. The record does not clearly show any statements by Hudson or any saliva DNA analysis evidence. Nor does the record show any use of such evidence by the State. Accordingly, we should not address the mer-

---

1. Although the trial court orally granted Hudson's motion as to the statements, the court's written order simply denies the motion.

its of Hudson's first two issues, and should overrule them on those grounds.

*Motion for New Trial.* In Hudson's third issue, he contends that the trial court erred in overruling Hudson's motion for new trial. Hudson's issue is inadequately briefed.[2] "The appellant's brief must ... contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(h). When an appellant does not provide argument with citations in support of an issue, the issue is inadequately briefed, presents nothing for review, and must be overruled. *See Hall v. State,* 160 S.W.3d 24, 26 n. 2 (Tex.Crim. App.2004), *cert. denied,* — U.S. ——, 125 S.Ct. 2962, 162 L.Ed.2d 891 (2005); *Hankins v. State,* 132 S.W.3d 380, 385 (Tex. Crim.App.), *cert. denied,* 543 U.S. 944, 125 S.Ct. 358, 160 L.Ed.2d 256 (2004); *McCarthy v. State,* 65 S.W.3d 47, 49 n. 2 (Tex. Crim.App.2001), *cert. denied,* 545 U.S. 1117, 125 S.Ct. 2906, 162 L.Ed.2d 298 (2005); *Tong v. State,* 25 S.W.3d 707, 710 (Tex.Crim.App.2000) (op. on orig. submission); *Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App.2000). Hudson's brief does not provide argument in support of his issue. Hudson's third issue is thus inadequately briefed, and we should overrule it on that ground.

We should, having overruled Hudson's issues on the above grounds, affirm. I concur in the judgment.

---

**2.** Hudson's issue, in its entirety, is as follows:
Appellant filed a motion for new trial presenting evidence that Defendant could not have voluntarily abandoned the Dr. Pepper can [from which Hudson alleges a saliva specimen was taken] because the jail rules prohibited him from taking such items back into the jail. Such motion established that the evidence seized from Appellant should have been suppressed at the original hearing. For this reason, along with the law showing the violations of Appellant's constitutional rights as detailed above, the trial court erred in denying Appellant's motion for new trial.